SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| TIFFANY BANKS, TAMMY BOSS, HENRY DIXON, AND YOLANDA THOMAS, <br><br> Plaintiffs, <br><br> NATALIE SANDERS, <br><br> Intervenor Plaintiff, <br><br> vs. <br><br> THE HOUSING AUTHORITY OF DEKALB COUNTY and EUGENE WALKER, in his official capacity as the Executive Director of the Housing Authority of DeKalb County, <br><br> Defendants. | CIVIL ACTION <br> CASE NO. **14CV3763-3** |

## BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

Until this month or last, Intervenor Plaintiff Natalie Sanders, was a recipient of housing assistance from Defendant Housing Authority of DeKalb County ("HADC") and Defendant Eugene Walker ("Defendant Walker") (collectively, "Defendants") in the form of a Housing Choice ("Section 8") voucher. With this voucher, Ms. Sanders entered into a lease agreement with a private landlord, and a rent subsidy, also known as Housing Assistance Payments, were paid to her landlord on her behalf. Defendants have terminated Ms. Sanders's assistance without cause and without providing required due process. Without Section 8 assistance, Ms. Sanders and her family face imminent eviction and homelessness.

Defendants terminated Ms. Sanders's Section 8 voucher without affording her due process required by, among other state and federal laws, the Due Process clauses of the state and

federal constitutions, 42 U.S.C § 1437d(k), 24 C.F.R. § 982.555, and the Defendant Housing Authority's own administrative plan. Although the Defendants provided Ms. Sanders with an informal hearing on the proposed terminations, as required by 24 C.F.R. §§ 982.554, 982.555, the Defendants relied exclusively on unreliable hearsay and discounted Ms. Sanders's own first-hand testimony controverting the hearsay evidence. The Defendants did not present a single witness with firsthand knowledge of the events at issue. In addition, the Defendants issued a hearing decision devoid of specific factual findings and not supported by the evidence presented. Finally, the alleged criminal activity of Ms. Sanders, even if she had committed the alleged acts, did not violate her obligations under the Section 8 program.

Therefore, we ask this Court to preserve the status quo as it existed prior to Defendant's recent termination of Ms. Sanders's Section 8 voucher assistance, and order Defendants to make any recent HAP payments it has withheld due to the improper termination, and continue making payments to her landlord under the Section 8 program until this case is resolved.[1]

---

[1] Counsel for Ms. Sanders believes that her assistance ended on July 31, 2014. On May 7, 2014, counsel sent a letter to HADC's attorneys asking for reconsideration of Ms. Sanders's termination. On May 13, 2014, HADC's attorney responded that HADC was looking into the case further, and he was recommending to his client that HADC reinstate Ms. Sanders's voucher and issue a new proposed termination letter later, if necessary. Ms. Sanders's landlord received a payment in June 2014, but has not received any payments since that time. In addition, I never received written confirmation that her voucher was reinstated. On July 9, 2014, HADC's attorney indicated that HADC would be moving forward with Ms. Sanders's termination, but he did not state when her assistance was going to end. Moreover, he did not state that HADC had already stopped making rent payments to Ms. Sanders's landlord.

I.  **BACKGROUND**

   A.  **LEGAL FRAMEWORK FOR THE FEDERALLY SUBSIDIZED SECTION 8 VOUCHER PROGRAM**

Congress passed the United States Housing Act "to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for families of lower income. . . ." 42 U.S.C. § 1437. The Act, as amended, established several different federally subsidized housing programs to fulfill these objectives, among them the Section 8 Housing Choice Voucher Program (hereafter "Section 8"). 42 U.S.C. § 1437f(o).

The Act empowers and directs the United States Department of Housing and Urban Development (hereafter "HUD") to administer federal financial assistance for housing and authorizes the Secretary of HUD to provide federal subsidies to local public housing authorities (hereafter "PHAs") to help finance the operation of the Section 8 program. 42 U.S.C. §§ 1437b, 1437c, 1437f. HUD promulgates regulations to administer the Section 8 program. These regulations are codified at 24 C.F.R. Parts 982 et. seq.

PHAs administering Section 8 must adopt a written administrative plan that establishes local policies for administration of the program according to HUD's requirements. The PHA must administer the program in accordance with the plan and must also comply with applicable HUD regulations. 24 C.F.R. §§ 982.54, 982.153.

PHAs issue housing vouchers to each qualified family that applies, and the voucher entitles such a family to rent a housing unit approved by the housing authority from a private landlord. 24 C.F.R. § 982.302(a). The PHA then pays a share of the rent to the Landlord so that the tenant can afford the housing unit. When Section 8 assistance is terminated, the PHA must promptly notify the family of the reason for the termination and afford the family an opportunity

to request an informal hearing on the decision. 24 C.F.R. §§ 982.554, 982.555. The informal hearing procedures must comply with the requirements in the authority's administrative plan and in HUD's regulations. Id. Factual determinations by hearing officers at informal hearings must be based on a preponderance of the evidence. Id.; 2013 Housing Choice Voucher Administrative Plan of the Housing Authority of DeKalb County, Georgia, at page 16-17 ("HADC Administrative Plan"). The burden of persuasion at informal hearings is on the PHA. Basco v. Machin, 514 F.3d 1177, 1182 (11th Cir. 2008).

### B. FACTS

Accompanying this Brief is a sworn Affidavit containing the specific facts of Ms. Sanders's case. See Exhibit B: Natalie Sanders's Affidavit in Support of Motion. Ms. Sanders notes the relevant dates and reasons for the proposed termination, the evidence presented by both sides at the hearing, and the ultimate decision by the Defendants to terminate her voucher.

### II. MS. SANDERS IS ENTITLED TO INJUNCTIVE RELIEF REQUIRING THE HOUSING AUTHORITY OF DEKALB COUNTY TO HONOR HER SECTION 8 VOUCHER.

The purpose of an injunction is to prevent any act that is contrary to equity and good conscience and for which no adequate remedy is provided at law. O.C.G.A. § 9-5-1. The interlocutory injunction "is a device to keep the parties in order, and prevent one from hurting the other whilst their respective rights are under adjudication." Milton Frank Allen Publ'ns, Inc. v. Georgia Ass'n of Petroleum Retailers, Inc., 223 Ga. 784, 788 (1967) (citations omitted). A superior court should grant an interlocutory injunction in order to preserve the status quo if a balancing of the relative equities favors the party requesting the injunction. Owens v. Ink Wizard Tatoos, 272 Ga. 728, 729 (2000) (citations omitted). Although a plaintiff need not show that there is a substantial likelihood of success on the merits for an injunction to issue, the merits are

"proper criteria for the trial court to consider in balancing the equities." R.D. Brown Contractors v. Bd. of Educ., 280 Ga. 201, 212 (2006).

A court should also consider "whether greater harm might result from refusing than from granting the relief prayed for." Paer v. Guhl, 236 Ga. 768, 769 (1976) (citations omitted). If the plaintiff shows greater harm would come from not granting a temporary injunction than from granting it, the Court should grant the injunction. See id.

### A.   NO ADEQUATE REMEDY AT LAW EXISTS

In the instant case, there is no adequate remedy at law. Ms. Sanders has a very limited income and cannot afford to pay for decent, safe and sanitary rental housing for herself and her minor children without assistance. If Defendants stop payment on Ms. Sanders's Section 8 voucher, it is likely that she and her family will be homeless. Monetary relief cannot adequately replace the loss of the family's housing and compensate a family for suffering homelessness.

### B.   A BALANCING OF THE EQUITIES FAVORS MS. SANDERS

Requiring that Defendants provide Ms. Sanders with the due process required by law and Defendant Housing Authority's own procedures does not constitute harm. Moreover, the Defendants will suffer no harm if the injunction is granted because Defendants have an active Housing Assistance Payment contract with Ms. Sanders's landlord and need only continue making the payments. Defendants would suffer no harm by continuing to pay Housing Assistance Payments to Ms. Sanders's landlord.

Likely eviction and homelessness are sufficient threats of irreparable harm to support injunctive relief. See Bloodworth v. Oxford Village Townhouses, 377 F. Supp. 709, 719 (N.D. Ga. 1974) (effective increase of fifty percent in housing costs may be tantamount to eviction or may impose substantial financial hardships on family sufficient to constitute irreparable harm);

see also Villas at Parkside Partners v. City of Farmers Branch, No. 3:06-CV-2371-L, 2007 U.S. Dist. Lexis 36918, at *31–32 (N.D. Tex. May 21, 2007) (threat of eviction if anti-immigrant ordinance enforced constitutes irreparable harm); Garrett v. City of Escondido, 465 F. Supp. 2d 1043, 1052 (S.D. Cal. 2006) (same); Lozano v. City of Hazleton, 459 F. Supp. 2d 332, 335 (M.D. Pa. 2006) (threat of eviction from home constitutes irreparable injury sufficient for temporary restraining order); Mitchell v. U.S. Dep't of Hous. & Urban Dev., 569 F. Supp. 701, 704–5 (N.D. Cal. 1983) (scarcity of public housing constitutes irreparable harm sufficient to preliminarily enjoin eviction).

Ms. Sanders and her children will suffer the extreme harm and dangers of homelessness unless relief is granted, because she cannot afford to pay for adequate housing. Homelessness would have a lasting and, perhaps, permanent negative physical and psychological impact on Ms. Sanders and her children, denying them stable homes, threatening their education, and subjecting them to physical danger.

### C. THERE IS A SUBSTANTIAL LIKELIHOOD THAT MS. SANDERS WILL SUCCEED ON THE MERITS BECAUSE DEFENDANTS HAVE DENIED HER RIGHTS TO DUE PROCESS AND ACTED IN VIOLATION OF FEDERAL AND STATE LAW.

The Housing Authority has violated Ms. Sanders's rights by terminating her housing assistance without the basic due process required by the Fourteenth Amendment and the Supremacy Clause of the Constitution of the United States of America, Article One of the Constitution of the State of Georgia, and other federal and state statutes and regulations. Moreover, Defendants have no authority to terminate a voucher based on unproven allegations of misconduct. Ms. Sanders needs only to succeed on one of these grounds to justify judgment in

her favor and an order requiring the Defendants to continue making Housing Assistance Payments.

### 1. The Defendant Housing Authority did not meet its burden of persuasion because the decision to terminate relied exclusively on unreliable hearsay evidence.

Before denying housing assistance, such as a Section 8 voucher, or even affecting an interruption in the receipt of that assistance, the Fourteenth Amendment of the United States Constitution and Article One of the Georgia Constitution demand that a housing authority, or PHA, provide a tenant certain due process, namely, with timely notice and a hearing held at a meaningful time and conducted in a meaningful manner. See U.S. CONST. amend. XIV, § 1; GA. CONST. art. I, § 1, para. 1; Dep't of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 135 (2002) (holding that it is "undoubtedly true" that public housing recipients have a constitutionally protected property interest in their public benefits); Goldberg v. Kelly, 397 U.S. 254, 266 (1970) (finding that "the interest of the eligible [welfare] recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens," and thus a hearing and notice are required before a termination, or interruption, is effected). Although the Georgia Constitution cannot provide fewer rights than those guaranteed in the U.S. Constitution, the Georgia Supreme Court has long made clear that Georgia's due process clause may provide even greater protections. See National Mortgage Corp. v. Suttles, 194 Ga. 768 (1942).

Federal regulations, promulgated under 42 U.S.C. § 1437f, 1437d(k) and 3535(d), impose specific due process requirements on PHAs when a denial or termination is proposed. 24 C.F.R. §§ 982.555, 982.554. When a PHA refuses to provide Section 8 benefits due to a tenant's failure

to act or a tenant's actions, Section 8 tenants are entitled to prompt written notice of a proposed decision and the reasons for it, a notice of the right to an informal hearing and the deadline for requesting the hearing, the informal hearing itself, a hearing officer that is impartial, and an expeditious written decision that states the reason for the decision. Id. These due process rights as expressed in the regulations are enforceable under 42 U.S.C. § 1983, the Supremacy Clause of the U.S. Constitution, and by writ of mandamus under O.C.G.A. § 9-6-20.

Morevoer, in Basco v. Machin, 514 F.3d 1177, 1183 (11th Cir. 2008), the 11th Circuit Court of Appeals found that before termination, a PHA must not only provide a hearing before termination, but also must "bear[] the burden of persuasion at an informal administrative hearing . . . to determine whether a Section 8 participant's housing subsidy should be terminated." In that case, the Defendant Housing Authority violated a Section 8 voucher holder's due process rights when it terminated her voucher for having unauthorized persons living in her unit solely based on two police reports. Id. at 1179. The Housing Authority presented no direct evidence to controvert the participant and her landlord's testimony that she did not have unauthorized persons living with her. Id. at 1180.

There are "limits on the extent to which an adverse administrative determination may be based on hearsay evidence." Id. at 1182. The Basco Court held that hearsay evidence may constitute substantial evidence in administrative proceedings only if (1) the out of court declarant was not biased and had no interest in the results of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpeonaed the declarant; (3) the information was not inconsistent on its face; and 4) the information has been recognized by the courts as inherently reliable. Id. (citing *JAM Builders v. Herman*, 233 F.3d 1350, 1354 (11th Cir. 2000). The Court stated that the Housing Authority in that case

should not have based an adverse determination on the hearsay statements, as the tenants could not subpoena the police officers for cross examination, and that the police reports themselves were legally insufficient to terminate the tenant's Section 8 benefits. Hearsay evidence cannot on its own support a termination of a Section 8 voucher. Id. at 1183.

In the instant case, the Defendants similarly presented no direct evidence of Ms. Sanders's violation of the Section 8 rules. Instead, the Defendants relied exclusively on unreliable hearsay in terminating her voucher.

For example, in Ms. Sanders's termination hearing, she presented undisputed testimony that she did not commit the crimes that led to her arrest. She testified that the charges against her were dismissed. She also explained that the charges brought against her were not violent in nature and did not occur on or near her apartment. The Defendants only presented a printout from a criminal background check, police reports, and printouts from the DeKalb County Online Judicial System (OJS) as evidence against her. Some of these documents actually supported Ms. Sanders's testimony by showing that the charges against her were dismissed. HADC presented no witnesses to dispute her testimony, nor any witnesses with first-hand knowledge of the incidents.

The hearing procedures also violated Basco because Ms. Sanders did not have an opportunity to subpoena any out-of-court declarants. See id. Neither HUD Section 8 procedures, nor HADC procedures, provide participants with the power to subpoena witnesses. Ms. Sanders had no way of compelling these declarants to appear at the hearing so that she could confront and cross-examine them. See also Richardson v. Perales, 402 U.S. 389, 407 (1971); McClees v. Sullivan, 879 F. 2d 451, 453 (8th Cir. 1989).

In addition to the Basco case and its progeny, the HADC's Administrative Plan addresses

-9-

the use of hearsay at their informal hearings. Although the Administrative Plan allows hearsay to be "generally admissible," it explicitly states that "hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." HADC Administrative Plan, p. 16-16.

Yet in Ms. Sanders's hearing, the hearing officer ignored the only direct evidence—the Ms. Sanders's own testimony. Instead, the hearing officer based the decision to terminate entirely on unreliable hearsay evidence that was inconsistent with Ms. Sanders's first-hand testimony. Given that the hearing officer was not lawfully entitled to rely upon the hearsay testimony, there was no other evidence presented by the Defendants upon which the hearing officer could have relied to meet their burden of persuasion in the hearing. In the words of the Basco court, the Defendants failed to establish their *prima facie* case to uphold their decision to terminate Ms. Sanders's housing voucher. See also, Ervin v Housing Authority of the Birmingham District, 281 Fed. Appx. 938 (2008).

### 2. Defendant's administrative decision does not meet the minimal due process requirements for explaining the basis of the decision.

The Defendants also violated Ms. Sanders's due process rights when they issued a decision that contained no specific factual basis for the termination. The Due Process Clause protects citizens from deprivations of life, liberty, or property without due process of law. U.S. Const. Amend. 14, § 1. This clause and applicable federal regulations require certain procedural safeguards in the conduct of informal hearings. One of the required elements of due process is that the hearing officer must give a basic explanation for the decision. See Goldberg, 397 U.S. at 271. "[T]he decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. To demonstrate compliance with this elementary

requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on. . . ." Id.

This requirement of an understandable decision applies to housing subsidy cases. In Lane v. Fort Walton Beach Hous. Auth., 518 Fed. Appx. 904, 906 (11th Cir. 2013), the 11th Circuit noted that in an earlier decision in the case "[t]he district court remanded the Lanes' termination case to the agency so that the Hearing Officer could make an amended determination that would be consistent with the federal regulations. See 24 C.F.R. § 982.555(e)(6) ("The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.") The Court of Appeals also held that the Housing Authority's "failure to issue an adequately reasoned decision" supported the plaintiff's due process claim. Lane, 518 Fed. Appx. at 913; see also Edgecomb v. Housing Auth., 824 F. Supp. 312, 316 (D. Conn. 1993) (holding that housing authority hearing officer's conclusory ruling was constitutionally inadequate).

In addition, the Defendants violated their own Administrative Plan by their hearing officer's failure in Ms. Sanders's decision to (a) summarize the testimony of each witness; (b) identify any documents that a witness produced in support of his/her testimony; (c) note the Plaintiff's legal representative in attendance at the hearing and; (d) include any findings of fact. HADC Administrative Plan, pg. 16-17.

The Defendant's written decision in this case does not meet these minimum due process requirements. Ms. Sanders's decision stated, in relevant part:

> During the hearing, we discussed the Housing Authority's proposed termination of your assistance for violation of the Housing Choice Voucher Family Obligations 4D4: *Engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises.* After a thorough review of your participant file, testimony received during the above referenced hearing and policy specific to your

continued eligibility, I can support the Housing Authority's decision to propose termination of your continued participation in the Housing Choice Voucher Program (Section 8) assistance, as a result of the April 8, 2011 and June 20, 2011 arrests.

Hearing Officer Decision, February 25, 2014 (emphasis in original). (Copy attached to Ms. Sanders's affidavit.) The decision completely fails to mention any witness testimony or any documentary evidence. Even worse, it completely fails to make any findings of fact or to articulate any reasons for the decision. The only statement specific to Ms. Sanders's case is the mention of two arrest dates, but it does not state any evidence relied on.

The hearing officer's decision in this case does not meet the minimum due process requirements and does not comply with the requirements of the HADC's own Administrative Plan. The decision simply rubber stamps HADC's decision to terminate Ms. Sanders's subsidy.

### 3. Defendants do not have legal grounds for terminating Ms. Sanders's voucher.

Ms. Sanders denies that she committed the crimes at issue and at her informal hearing, and she presented undisputed evidence that the charges against her were dismissed. Even the HADC's own evidence showed that the charges had been dismissed. Moreover, even if the Defendants had shown that she committed the alleged crimes, they would not have grounds to terminate her from the program.

A PHA may terminate a participating family's Section 8 assistance if (a) the family violates any of its obligations under the Section 8 Program, which are set out in 24 C.F.R. § 982.551; or (b) the family engaged in criminal activity as described in 24 C.F.R. § 982.553. 24 C.F.R. § 982.552(c)(1). To be terminated for criminal activity, the participant's crimes must be violent, drug-related, or must occur on or near the residence. 24 C.F.R. § 982.553 (referencing crimes described in 24 C.F.R. § 982.551). Violent criminal activity is defined as, "any criminal

activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury or property damage." HADC Administrative Plan (2013), page 12-6; 24 C.F.R. § 5.100.

"Violent criminal activity," as defined above, does not include the Georgia offense of simple battery. O.C.G.A. § 16-5-23 explains that a person commits the offense of simple battery when she: (a) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (b) Intentionally causes physical harm to another. Thus, a person cannot be terminated from the Section 8 Program for committing simple battery, unless the act occurs on or near the residence and puts others in the area in danger. Violent criminal activity also does not include the Georgia offenses of giving a false name to police or public intoxication, as neither involve a use of force.

Even if Ms. Sanders had committed the offenses of simple battery, giving a false name to police, or public intoxication, these offenses do not rise to the level of "violent criminal activity" for the purposes of Section 8 termination. Further, it was undisputed that the incidents took place several miles from her residence, so they could not constitute a safety threat to anyone near her residence. Thus, even if HADC had properly determined that Ms. Sanders committed all three charged offenses—which Ms. Sanders denies she committed and where the charges were dismissed—HADC would not have grounds to terminate her from the Section 8 Program.

### III.    THE COURT SHOULD NOT REQUIRE SECURITY FROM MS. SANDERS

The Court has the discretion to allow Ms. Sanders to proceed without requiring a security or bond. See O.C.G.A. § 9-11-65(c). Given the high likelihood of success on the merits, Ms. Sanders's status as a recipient of public assistance, the small impact on the Defendants, and the

fact that the injunction seeks merely to require Defendants to maintain the status quo, no security or bond should be required.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant a temporary restraining order and interlocutory injunctive relief requiring Defendants to continue to make Ms. Sanders's Section 8 Housing Assistance Payments while this action is pending, and to provide all other services that she would otherwise be entitled to as a participant in good standing of the Section 8 voucher program.

This the 6th day of August, 2014.

_____
Lindsey M. Siegel (Bar No. 730072)
Deborah A. Johnson (Bar No. 393320)
Attorneys for Intervenor

Atlanta Legal Aid Society, Inc.
246 Sycamore Street, Suite 120
Decatur, Georgia 30030
Tel:   (404) 817-7522 (Siegel)
        770-817-7507 (Johnson)
Fax:   (404) 377-2349